UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA, TALLAHASSEE DIVISION

CASE No. 4:23-cv-00156-MW-MJF

Francisco Catalin **DELIU**, of Wellington, pro se, Plaintiff

v.

**FLORIDA BOARD OF BAR EXAMINERS**, 1st Defendant, Rachelle Richardette **MUNSON**, of Tallahassee, Chair of the Florida Board of Bar Examiners, Melinda Louise **McNICHOLS**, of Miami Springs, Vice Chair of the Florida Board of Bar Examiners, Dennis John **ALFONSO**, of Dade City, Diana Kay **BOCK**, of Odessa, Timothy S. **DANNINGER**, of Jacksonville, Brandice Davidson **DICKSON**, of Tallahassee, John Randall **DIERKING**, of Orlando, Cristina Elena **GROSCHEL**, of Margate, Laura Esterman **PINCUS**, of West Palm Beach, Paul Joseph **SCHWIEP**, of Miami, Stanley H. **WAKSHLAG**, of Miami & Victoria J. **WILSON** of Miami, Lawyer Members of the Florida Board of Bar Examiners, Sanjena V. **CLAY**, of West Palm Beach, John W. **EVANS**, of address unknown & Paula S. **O'NEIL**, of Pasco, Non-Lawyer Members of the Florida Board of Bar Examiners, 2nd – 16th Defendants and Ms Michele A. **GAVAGNI**, Executive Director of the Florida Board of Bar Examiners & Mr James T. **ALMON**, of address unknown, General Counsel of the Florida Board of Bar Examiners, 17th – 18th Defendants

---

## FIRST AMENDED COMPLAINT

---

### Dated 13 July 2023

FILED USDC FLND TL
JUL 19 '23 PM3:17



*F C Deliu, pro se*

Tel: (561) 298 - 1517

fcdeliu@gmail.com

TABLE OF CONTENTS

COMPLAINT...................................................................................................3

INTRODUCTION............................................................................................ 3

PARTIES........................................................................................................4

JURISDICTION...............................................................................................4

VENUE...........................................................................................................5

STATEMENT OF FACTS .................................................................................5

STATEMENT OF LAW................................................................................... 10

SUMMARY OF ARGUMENT........................................................................... 13

CAUSES OF ACTION..................................................................................... 14

SUMMARY OF PRAYER FOR RELIEF............................................................ 26

JURY DEMAND............................................................................................. 27

EXECUTION AND CONTACT DETAILS........................................................... 28

## COMPLAINT

1.  This case is <u>firstly</u> about the vires of an administrative agency created by a state's supreme court's rules, particularly whether it has been lawfully created. It is <u>secondly</u> or anyway about an unlawful indefinite suspension of a bar applicant's admission to a local bar. It is <u>thirdly</u> and in any event about an illegal refusal to allow him to petition for a reconsideration of said unlawful suspension.

## INTRODUCTION

2.  Pursuant to constitution and statute, a bar applicant's admission to the legal profession is "*exclusive[ly]*" and "*proper[ly]*" within the power of his state supreme court. Notwithstanding the clear and unambiguous wording of the law, an administrative agency created by that court through its rules is delegated to process the plaintiff's application from its inception. He avers to its legality, so brings the instant suit as he is being subjected to ongoing illegal processes by an unlawful body.

3.  In 2021, the plaintiff applied to join the local bar. His application was progressed in the ordinary way by the agency. Suddenly, in 2023, he is required to show cause why his application ought not be indefinitely suspended. He averred as to the members' authority to so do as the operative rules did not allow for such a step. They disagree and suspend his application indefinitely. He now seeks redress through this lawsuit over that unlawful policy, process and decision.

4.  He anyway petitions said agency for a reconsideration but its support staff repeatedly refuse to place his petition before the agency. He now seeks redress through this lawsuit over that unlawful process and resultant refusals.

5.  To avoid any and all doubt, the plaintiff firstly alleges that the agency in question has not been created intra vires. Alternatively, even assuming for the sake of argument that it is a lawful body, he in any event alleges that it does not have the power to enact any policy to even consider suspending applications, much less actually suspend any applications. In the alternative, even assuming it does have the power to suspend his application, he anyway alleges that the support staff lacks the power to refuse to accept his petition for reconsideration.

6.  To be clear, he argues that his application ought never be before this agency as it is not a lawful body and so he is suffering harm by being subjected to processes by an unlawful body that are materially prejudicing his ability to practice law.  Regardless of that, he argues that his application has been illegally suspended for an indefinite period by a body that simply does not have the power to implement such a policy.  Regardless of that, he argues that his petition has been wrongly rejected for filing by actors who simply have no authority to refuse to place it before the agency.

## PARTIES

7.  The plaintiff, Francisco Catalin Deliu (hereinafter "Deliu"), a litigant in person, is an admitted barrister and solicitor in multiple jurisdictions overseas, currently resident in the state of Florida (hereinafter "Florida").

8.  The first defendant, the Florida Board of Bar Examiners (hereinafter the "Board"), is a purportedly lawful administrative agency created by the Florida Supreme Court (hereinafter the "Supreme Court") to, inter alia, process applications for admission to The Florida Bar (hereinafter the "Bar").

9.  The second through sixteenth defendants, Rachelle Richardette Munson, chair, Melinda Louise McNichols, a.k.a. Mindy McNichols, vide chair, Dennis John Alfonso, Diana Kay Bock, Timothy S. Danninger, Brandice Davidson Dickson, John Randall Dierking, Cristina Elena Groschel, Laura Esterman Pincus, Paul Joseph Schwiep, Stanley H. Wakshlag, Victoria J. Wilson, lawyer members, and Sanjena V. Clay, John W. Evans & Paula S. O'Neill, lay members, are together the fifteen members of the Board (hereinafter jointly the "members").

10.  The seventeenth and eighteenth defendants respectively, Michele A. Gavagni, is the executive director of the Board and James T. Almon, is its general counsel (hereinafter jointly the "staff").

## JURISDICTION

11.  This Court has subject-matter jurisdiction to grant the relief sought under 28 U.S.C. §§ 1331, 1343(3), 1367 and/or 2201-2202, the Constitution of the United States of America and its Amendments (hereinafter the "federal Constitution") and the Court's equitable powers.

## VENUE

12. Venue lies in this district pursuant to 28 U.S.C. § 1391 as the Rules of the Supreme Court Relating to Admissions to the Bar (hereinafter the "Rules") in question were promulgated by the Supreme Court while sitting at Tallahassee and the processes, decisions and refusals that gave rise to the instant dispute all occurred at or through the Board's headquarters situated in Tallahassee. All defendants are Florida persons or residents.

## STATEMENT OF FACTS

13. On or about June 10th to the 15th in 2021, Deliu applied for admission to the Florida Bar.

14. At all material times since, his application has been before Board and its members; it has **never** been before the Supreme Court or any of its honorable and learned Justices.

15. The Supreme Court's legal powers are enunciated **only** in Article 5, §§ 3 & 15 of the Florida Constitution (hereinafter the "state Constitution"):

SECTION 3.    Supreme court.—

(a)    ORGANIZATION.—The supreme court shall consist of seven justices. Of the seven justices, each appellate district shall have at least one justice elected or appointed from the district to the supreme court who is a resident of the district at the time of the original appointment or election. Five justices shall constitute a quorum. The concurrence of four justices shall be necessary to a decision. When recusals for cause would prohibit the court from convening because of the requirements of this section, judges assigned to temporary duty may be substituted for justices.

(b)    JURISDICTION.—The supreme court:

(1)    Shall hear appeals from final judgments of trial courts imposing the death penalty and from decisions of district courts of appeal declaring invalid a state statute or a provision of the state constitution.

(2)    When provided by general law, shall hear appeals from final judgments entered in proceedings for the validation of bonds or certificates of indebtedness and shall review action of statewide agencies relating to rates or service of utilities providing electric, gas, or telephone service.

(3)    May review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.

(4)    May review any decision of a district court of appeal that passes upon a question certified by it to be of great public importance, or that is certified by it to be in direct conflict with a decision of another district court of appeal.

(5)    May review any order or judgment of a trial court certified by the district court of appeal in which an appeal is pending to be of great public importance, or to have a great effect on the proper administration of justice throughout the state, and certified to require immediate resolution by the supreme court.

(6)    May review a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida.

(7)    May issue writs of prohibition to courts and all writs necessary to the complete exercise of its jurisdiction.

(8)    May issue writs of mandamus and quo warranto to state officers and state agencies.

(9)    May, or any justice may, issue writs of habeas corpus returnable before the supreme court or any justice, a district court of appeal or any judge thereof, or any circuit judge.

(10)    Shall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law.

(c)    CLERK AND MARSHAL.—The supreme court shall appoint a clerk and a marshal who shall hold office during the pleasure of the court and perform such duties as the court directs. Their compensation shall be fixed by general law. The marshal shall have the power to execute the process of the court throughout the state, and in any county may deputize the sheriff or a deputy sheriff for such purpose.

SECTION 15.    Attorneys; admission and discipline.—The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted.

16.  Save for the Clerk and Marshall positions, **nowhere** in the state Constitution – or any statute – is the Supreme Court authorized to appoint any public officer holder, **much less** create any administrative agency and **even less so** one that operates as a sub-court or quasi-court.

17.  Notwithstanding the lack of **any** express democratic or lawful authority, in 1955 the Supreme Court **purported** to sua sponte[1] birth the Board as an administrative agency that in practice functions as a sub or quasi court, *LaBossiere v. Florida Board of Bar Examiners*, 279 So. 2d 288 (1973) (ed. – emphasis added):

---

[1] Cf Magistrate Judges in this Honorable Court who are creatures of statute, 28 U.S.C. § 631(a) et seq.

The Florida Board of Bar Examiners, as presently constituted, was created by this Court in 1955 pursuant to **general statutory and constitutional authority** declaring the admission of attorneys to practice law in Florida to be exclusively a judicial function. Fla. Const., Article V, § 23 (1885), F.S.A.; Chapter 29796, Section 1, Laws of Florida (1955); Fla. Stat. § 454.021(1), F.S.A.

18. By July 2021, Deliu takes the Bar examination. In August 2021, an issue is raised as to whether he is eligible to sit for the Bar. That same month, he petitions for a waiver of ineligibility. In September 2021, his results are impounded. In October 2021, his petition for a waiver is denied. That same month, he petitions for a reconsideration. In December 2021, he is granted a reconsideration, his ineligibility to sit is waived, his scores are released and he learns that he passed all necessary parts such that, subject to any character issues, he is eligible for admission. December 13th of 2021 is nominated as the date of the opening of his file. His file is processed in the usual way for well over a year without any difficulties.

19. On January 13, 2023, the Board, through its members, issues Deliu with a show cause letter asking him why his Bar application ought not be suspended (for reasons unrelated to the original ineligibility issue supra). On January 19, 2023, he answers the show cause letter and argues, inter alia, that it (and impliedly they) lacks jurisdiction to suspend his application, or, in any event, that there is no basis in law or fact to do so and lastly seeks informal discovery. On January 26, 2023, he receives partial discovery of the document pleaded infra at ¶ 23. On January 27, 2023, he further avers to the legality of any intimated suspension. On February 10, 2023, the Board, through its members, decides to suspend his application sine die (hereinafter the "Decision"). The Decision is labeled as a "Notice of Board Action" and its reasoning is transmitted to him in writing on February 15, 2023.

20. Deliu has **no** pathway to directly challenge the Decision (see infra at ¶ 32). If he is not admitted by a certain date, his application **will** lapse and be denied. The underlying basis for the suspension will continue in perpetuity, so, unless the Decision is quashed, he will never be able to practice law again, at least not in the jurisdiction where he is permanently domiciled and has passed the Bar.

21. The Rules **do not** expressly provide the Board, or its members, with the power to suspend any bar application and **never** has the Supreme Court authorized any such policy. Instead, the Board interprets a clearly **inappropos** rule as providing it with broad authority to enact a policy (hereinafter the "Policy") to suspend applications. For example, in the Decision, the Board gave the following, irrational, explanation as to the source of its power to do so:

Last, you argued that the board has no authority to adopt the Suspension in Processing Policy in the first place. The board rejects that argument. The board has used policies to help govern its operations for decades. Among other things, policies like the Suspension in Processing Policy promote fair treatment for applicants whose files present similar issues. Indeed, the bar admission rules reflect that "continuity of policy" is an important consideration for the board. Fla. Bar Admiss. R. 1-31 ("Members of the board should be appointed for staggered terms to ensure continuity of policy but with sufficient rotation to bring new views to the board..."); see also Amendment to Rules of Supreme Court of Fla. Relating to Admission to Bar re Board Members Emeritus, 630 So. 2d 576, 577 (Fla. 1994) ("[T]o ensure consistent application of current board policy, we believe it is desirable that a majority of the members sitting at both the investigative and formal hearings should be current board members"). Board policies also promote the efficient allocation of resources in processing thousands of applications to the Bar every year.

22. As another illustration, on March 3, 2023 the Board, through its members, advised Deliu that:

Your Argument Re: Board's Authority to Enact Policies

You claim that the board has not identified a legal basis for the Suspension in Processing policy. Again, that is incorrect. The Notice of Board Action explained why the board has a Suspension in Processing policy and cited authority from the bar admission rules and a published opinion of the Florida Supreme Court.

You also question whether the board approved the Suspension in Processing Policy. The board approved the current version of the policy at its Policy Session on June 7 and 8, 2019. Justices of the Florida Supreme Court were present for the discussion and the board's vote to approve the current version of the policy. The board holds a Policy Session yearly, and Justices of the Florida Supreme Court are invited to attend the session.

23. The Policy is contained in the Board's internal operating manual and is extracted in toto as follows:

## Suspension of Processing

The table below identifies certain incidents that, while pending, preclude the board from recommending an applicant's admission. The table also identifies certain incidents that, while pending, preclude the staff from advancing an applicant file beyond a particular stage of the character and fitness process. Where the table indicates "yes," the staff may move forward with the action even if the incident remains unresolved. Where the table indicates "no," the staff may not move forward with the action unless the board directs otherwise.

| Issue | Staff Investigation | Report to Board | Investigative Hearing | Formal Hearing | CLI/Registrant Clearance | Admission |
|---|---|---|---|---|---|---|
| File Processing Guidelines When C&F Issues Remain Pending or Unresolved | | | | | | |
| Felony Charges | No | No | No | No | No | No |
| Unlicensed Practice of Law Investigation (UPL) | Yes | No | No | No | No | No |
| Misdemeanor Charges | Yes | No | No | No | No | No |
| Law School Action | Yes | Yes | Yes | Yes | Yes | No |
| Misdemeanor Probation | Yes | Yes | No | No | No | No |
| Fee Owed to the Board | Yes | Yes | Yes | Yes | Yes | No |
| Litigation with fraud allegations | Yes | Yes | Yes | No | No | No |
| Contempt of Court | Yes | Yes | Yes | No | No | No |
| Attorney Grievance/Discipline | Yes | Yes | Yes | No | N/A | No |
| Professional Grievance/Discipline | Yes | Yes | Yes | No | N/A | No |
| Bankruptcy | Yes | Yes | Yes | No | No | No |

24. On February 28, 2023, Deliu intimated that he would seek reconsideration of the Decision. On March 3, 2023, staff wrote to Deliu and purported to buttress further reasons for the Decision. On March 12, 2023, Deliu formally petitioned the Board for reconsideration and/or a waiver (hereinafter Deliu's "Petition") under the following Rule (ed. – emphasis added):

2-30 Petitions Relating to Administrative Rulings.

2-30.1 Filed with the Board. Any applicant or registrant who is dissatisfied with an administrative decision of the board that does not concern character and fitness matters may petition the board for reconsideration of the decision. Applicants also may petition the board for a suspension or waiver of any bar admission rule or regulation. A petition seeking a suspension or waiver of a rule or seeking review of an administrative decision not related to a character and fitness **recommendation** may be presented in the form of a letter, must be filed with the board within 60 days after receipt of written notice of the board's action complained of, and must be filed with a fee of $75....

25. On March 22, 2023, the Board's assistant staff wrote to Deliu and purported to lawfully refuse to accept his Petition (hereinafter the "First Refusal") on the erroneous basis that it was a character and fitness decision when, clearly, it was **not**; it was an administrative decision to suspend the processing of his application and **never** made any recommendation as to his character and fitness.

26. On March 26, 2023, Deliu averred to the staff's refusal and moved for a reconsideration. On March 29, 2023, Board counsel staff wrote to Deliu and purported to lawfully affirm the refusal to accept his Petition (hereinafter the "Second Refusal").

27. On March 30, 2023, Deliu wrote to Board counsel staff and moved that the Board consider the issue of whether or not to accept his Petition. On April 5, 2023, Board counsel staff wrote to Deliu and confirmed that it was staff who made the First and Second Refusals and confirmed that Deliu's request that the Board consider the issue of whether or not to accept his Petition would **never** be placed before the Board to consider (hereinafter the "Third Refusal").

28. For all intents-and-purposes, Deliu's Bar application will **never be determined, will lapse, be denied and fail**, even though per the Rules he is entitled to a decision from the Supreme Court.

## STATEMENT OF LAW

29. Federal District Courts have subject-matter jurisdiction over "*general challenges to state bar **rules***", *Uberoi v. Supreme Court of Fla.*, 819 F.3d 1311, 1313 (11th Cir. 2016), cited with approval by *Ramos v. Tomasino*, No. 16-15890 (11th Cir. Jul. 7, 2017) and including consideration of constitutional challenges to facial validity of "*general rules **and procedures** governing admission to the bar*", *Kirkpatrick v. Shaw*, 70 F.3d 100, 102 (11th Cir. 1995) (ed. – emphasis mine).

30. Deliu has **no** other manner in which to challenge their unlawful decisions. There is **no** right of appeal to either the Supreme Court or the United States Supreme Court or any other court. Any rights of review he may have against any of its decisions only vest in the Florida Supreme Court but **only if or when** he is dissatisfied with the Board's substantive recommendation as to his character, but that stage will **never** be reached as the Board has suspended his application sine die and so it **cannot ever** reach the Supreme Court. Ergo, so long as the indefinite suspension stands, in 2026 his file **will** be closed without adjudication on the merits. Reconsideration of the Board's decision to suspend is his **only** recourse, but staff are illegally precluding even that from occurring.

31. For the avoidance of any and all doubt, this claim does **not** challenge a state court's judicial decision in a particular case that has resulted in the unlawful denial of admission to a particular bar applicant because **no** such event **has** or ever **will** occur.  Deliu's Bar application is being processed by an unlawful administrative agency, has been suspended by its members through its illegal policy and his petition for reconsideration has been illegally rejected for filing by its support staff that simply has no power to so do.  To be absolutely crystal clear, the Supreme Court has not only **not** made any decision but it certainly has **not** made any final decision on the merits and it most certainly will **never** do so as Deliu's Bar application is in procedural purgatory without any possible end – other than this proceeding succeeding – due to the unlawful actions pleaded.  No procedural bars present in either of *Uberoi v. Supreme Court of Fla.,* 819 F.3d 1311, 1313 (11th Cir. 2016) or *Kirkpatrick v. Shaw,* 70 F.3d 100, 102 (11th Cir. 1995) are engaged by the actions under challenge in this unique case.

32. Similarly, Deliu has exhausted **all** available state remedies; indeed, part of his case is the staff are illegally refusing to allow him to petition for reconsideration of the unlawful suspension order predicated on the illegal policy enacted by the unlawful body.  Other than the reconsideration rule cited supra at ¶ 24 which Deliu says he is entitled to engage but the staff are denying him the ability to use, these are the only other rights of review under the Rules and **none** are applicable to his file:

2-30 Petitions Relating to Administrative Rulings.

2-30.1 Filed with the Board. Any applicant or registrant who is dissatisfied with an administrative decision of the board that does not concern character and fitness matters may petition the board for reconsideration of the decision. Applicants also may petition the board for a suspension or waiver of any bar admission rule or regulation. A petition seeking a suspension or waiver of a rule or seeking review of an administrative decision not related to a character and fitness recommendation may be presented in the form of a letter, must be filed with the board within 60 days after receipt of written notice of the board's action complained of, and must be filed with a fee of $75.

2-30.2 Filed with the Court. Any applicant or registrant who is dissatisfied with an administrative decision of the board that does not concern character and fitness matters may, within 60 days after receipt of written notice of that decision, file a petition with the Supreme Court of Florida for review of the action. If not inconsistent with these rules, the Florida

Rules of Appellate Procedure are applicable to all proceedings filed in the Supreme Court of Florida. A copy of the petition must be served on the executive director of the board. The applicant seeking review must serve an initial brief within 30 days of the filing of the petition. The board will have 30 days to serve an answer brief after the service of the applicant's initial brief. The applicant may serve a reply brief within 30 days after the service of the answer brief.

3-40 Petition for Court Review.

3-40.1 Dissatisfied with Board's Recommendation. Any applicant or registrant who is dissatisfied with the recommendation concerning his or her character and fitness may petition the Supreme Court of Florida for review within 60 days from receipt of the Findings of Fact and Conclusions of Law, within 60 days of receipt of notice of the board's action on a petition filed under rule 3-30, or within 60 days from receipt of notice of the determination that a petition filed under rule 3-30 does not meet the criteria of that rule for reconsideration. If not inconsistent with these rules, the Florida Rules of Appellate Procedure are applicable to all proceedings filed in the Supreme Court of Florida. A copy of the petition must be served on the executive director of the board. The applicant seeking review must serve an initial brief within 30 days of the filing of the petition. The board will have 30 days to serve an answer brief after the service of the applicant's initial brief. The applicant may serve a reply brief within 30 days after the service of the answer brief. At the time of the filing of the answer brief, the executive director will transmit the record of the formal hearing to the court.

33. Nor do any of the defendants enjoy 11th Amendment sovereignty.  On Deliu's theory of the case, the Board is **not** a lawful body; ipso facto it cannot enjoy any state or other immunities, much less can its members or staff acting outside of their authority.  Even if the Board is a lawful body, neither it or its members and staff meet the four-factor test in *Manders v. Lee* 338 F.3d 1304 (11th Cir. 2003).  Putting even that aside, the ultra vires actions of the members and staff are such that there is an *Ex parte Young* 209 U.S. 123 (1908) exception that applies to the instant facts as pled.

34. Neither is there any proper basis for this Court to abstain.  *Younger v. Harris,* 401 U.S. 37 (1971) does not apply as on Deliu's pleadings the Board, members and staff are all – in various ways – acting ultra vires such that the abstention doctrine is manifestly inappropos as it applies only where there is a lawful action taken by a state actor which here there is **not**.  Finally, the abstention doctrine exception in *Middlesex County Ethics Comm. v. Bar Assn.,* 457 U.S. 423 (1982) applies.

35. Additionally, there is **no** entitlement to suspend Deliu's bar application, so *Fla. Bd. of Bar Examiners re Webster,* 3 So. 3d 1058 (Fla. 2009) is distinguishable as in that the case the issue there was whether or not that applicant was ineligible to apply and the Court so found, whereas in the current matter eligibility has already been determined favorably, see ¶ 18 supra.

36. Finally, there is no duplication. I intend to pursue all grievances in the current proceeding[2].

## SUMMARY OF ARGUMENT

### BOARD

37. Deliu argues that the Board – as purportedly created by the Rules – is an ultra vires body such that he is being subjected to continuing unlawful processes by an illegal agency resulting in harm.

38. The Rules specifically in issue in this proceeding are:

1-12 Rules. The Rules of the Supreme Court Relating to Admissions to the Bar are reviewed, approved, and promulgated by the Supreme Court of Florida. ...

1-13 Florida Board of Bar Examiners. The Florida Board of Bar Examiners is an administrative agency of the Supreme Court of Florida created by the court to implement the rules relating to bar admission.

1-20 Florida Board of Bar Examiners.

1-21 Membership. The Florida Board of Bar Examiners consists of 12 members of The Florida Bar and 3 public members who are not lawyers.

39. The Supreme Court, in implementing Rr 1-12, 1-13, 1-20 & 1-21, **purported** to create the Board. It did not have the necessary constitutional or statutory authority to do so.

40. The Board is ultra vires such that Deliu is being subjected to an ultra vires process and so thereby his federal and/or state constitutional and/or civil rights are being violated.

### MEMBERS

41. The Policy is ultra vires the Rules in violation of Deliu's civil rights under the federal Constitution and/or state Constitution.

---

[2] If this proceeding is not dismissed, I will either file a voluntary dismissal in 4:23-cv-00171-WS-MAF or abandon the appeal I intend to take against any involuntary dismissal that may be ordered in that matter.

42. The **only** powers the Board may exercise is pursuant to the Rules and **nowhere** do they permit the suspension of any bar application under any circumstances such that it simply has no power to suspend Deliu's application period, especially as the particular rule that it relied on (in ¶ 21 supra) does not allow it to create any policy much less a particular policy to suspend.  It is extracted in full herein:

1-30 Board Member Responsibilities.

1-31 Tenure. A board member should be appointed for a fixed term but should be eligible for reappointment if the board member's work is of high quality. Members of the board should be appointed for staggered terms to ensure continuity of policy but with sufficient rotation to bring new views to the board and to ensure continuing interest in its work.

43. Moreover, even if arguendo the rule in question gives a general power to adopt policy, which it does not, then anyway the only manner in which the Board may enact any specific policy is through an express written delegation from a majority decision of the Supreme Court, which it does not have, such that its policy is, at most, a draft intention of policy and inoperative.  At most the Board had an unclear number of unknown Justices present, not voting, at a meeting where and when the Board claims to have lawfully adopted the Policy (see ¶ 22 supra) which was not sufficient.

STAFF

44. The Board's staff have acted contrary to law in repeatedly refusing to place Deliu's Petition before the Board (hereinafter the "Refusals" under attack).  They do not have any power under the Rules to do so.  Even assuming arguendo that the Board was lawfully created, and even assuming arguendo that the Members had the power to enact the Policy to suspend applications, the Board's staff does not have the authority to refuse to place petitions before it.

45. Neither of the staff have the lawful authority to consider the merits of, much less reject for filing, any petition for the Board and even less so to refuse to even allow any preliminary question of jurisdiction to accept a petition for filing to be determined by the Board.  Their actions are ultra vires.  In any event, their decisions are wrong in law such that they violate Deliu's due process rights.

## CAUSES OF ACTION

I.     First Count Against the Board – Ultra Vires Violation of Constitutional and/or Civil Rights

46. Deliu has rights under the Fifth and Fourteenth Amendments to the federal Constitution in that the Fifth Amendment provides that no one shall be "*deprived of life, liberty or property without due process of law….*"  The Fourteenth Amendment imports that prohibition to the states of the United States, which includes Florida.

47. Deliu also has rights under Article 1, Section 9 of the state Constitution which provides that "*[n]o person shall be deprived of life, liberty or property without due process of law….*"

48. An ultra vires act is one that is "*[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law.*" Black's Law Dictionary (10th ed., 2014).

49. Fla. Const., Article V, § 23 (1885), F.S.A. does **not** authorize the power to create any administrative agency or quasi or sub-court generally or the Board specifically:

Section 23. A Constable shall be elected by the registered voters in each Justice's district, who shall perform such duties, and under such regulations as may be prescribed by law.

50. Chapter 29796, Section 1, Laws of Florida (1955); Fla. Stat. § 454.021(1), F.S.A. does **not** authorize the power to create any administrative agency or quasi or sub-court generally or the Board specifically:

Attorneys; admission to practice law; supreme court to govern and regulate.

(1) Admissions of attorneys and counselors to practice law in the state is hereby declared to be a judicial function.

(2) The supreme court of Florida, being the highest court of said state, is the proper court to govern and regulate admissions of attorneys and counselors to practice law in said state.

(3) This section shall not affect the right of the legislature at any time to change the provisions hereof and the legislature hereby expressly reserves that right.

51. **Neither** of Fla. Const., Article V, § 23 (1885), F.S.A. or Chapter 29796, Section 1, Laws of Florida (1955); Fla. Stat. § 454.021(1), F.S.A granted the Supreme Court the authority to create the Board.

52. Notwithstanding the lack of any power whatsoever to create a new body, the Rules purport to have done so, **particularly this Rule that is the subject of the instant dispute** (ed. – emphasis mine):

1-13 Florida Board of Bar Examiners. The **Florida Board of Bar Examiners is an administrative agency of the Supreme Court of Florida created by the court to implement the rules relating to bar admission**.

53. **The Board is an illegal body under Florida law**; full stop.

54. The state Constitution expressly provides that the Supreme Court has "**exclusive**" jurisdiction to admit lawyers, yet Deliu's bar application is being handled solely by the Board.

55. Under current § 454.021of the Florida Statutes, "*[t]he Supreme Court of Florida, being the highest court of said state, is the [']**proper**['] court to govern and regulate admissions of attorneys and counselors to practice law in said state*" but Deliu's bar application is, instead, being processed entirely by an administrative agency without **any** constitutional, statutory or other authority.

56. **No** current member of the Board considering Deliu's bar application is one of the 7 sitting Justices of the Supreme Court and **no** Justice of the Supreme Court has considered Deliu's Bar application.

57. By virtue of the Rules purporting to create a legal entity which is **not** authorized by either the state Constitution or Florida statutes, Deliu has been exposed to ultra vires Board processes in excess of the powers bestowed by the people of Florida to the judicial branch of the Florida government vis-à-vis the Supreme Court's unlawful delegation of function through the Rules.

58. In breach of the federal Constitution's Fifth and Fourteenth Amendments and/or Article 1, Section 9 of the state Constitution, the Rules violate the state Constitution and/or Florida statute in abdicating the "exclusive" and "proper" function to the Board which in turn has ultra vires handled Deliu's bar application under the Rules.

59. Deliu has been subjected to unconstitutional processes in violation of his civil rights that have caused ongoing injuries in fact in the form of his Bar application not being handled in accordance with Florida law, his Bar application being processed by an ultra vires Board and/or his Bar application not being considered by the proper body that ought to, namely the Supreme Court.

60. There is a direct causal connection from the ultra vires creation of the Board under the Rules to Deliu's injuries.

61. It is likely that Deliu's injuries will be redressed by a favorable decision from this Court, inter alia by a declaration that the Board lacks jurisdiction to process his application and/or that the Supreme Court is the sole lawful authority under Florida law to process his application.

62. **WHEREFORE** Deliu begs that a declaration issue that the Board is ultra vires ab initio, that the Florida Supreme Court ought take over his Bar application or for such other recourse as seen fit.

II.     First Count Against the Members (or Second Count Against the Board if Count I Supra Fails) – Ultra Vires/Equitable Relief

63. The Policy is "*outside the objects for which the corporation was created as defined by the laws of its organization and limited by the statutes authorizing its existence*", *Liberty Counsel v. Fla. Bar Bd. of Governors*, 12 So. 3d 183, 191 (Fla. 2009).

64. The Rules do **not** authorize policymaking power generally or the Policy specifically. The Supreme Court did **not** authorize policymaking power generally or the Policy specifically. The Policy is in excess of the limited powers the Supreme Court granted the Board under the Rules. The Members, in adopting and/or applying the Policy to Deliu's Bar application have acted ultra vires.

65. *American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, held that ultra vires actions must be able to be challenged as a discrete cause of action "*[o]therwise the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law*," at pg 110, as "*[t]he facts, which are here admitted of record, show that the case is not one which, by any construction of those facts, is covered or provided for by the statutes under which the Postmaster General has assumed to act, and his determination that those admitted facts do authorize his action is a clear mistake of law as applied to the admitted facts, and the courts therefore must have power in a proper proceeding to grant relief,*" at pg 109. "*[W]here [an] officer's powers are limited by statute, his actions beyond those limitations . . . are ultra vires his authority and therefore may be made the object of specific relief*", *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949).

66. The Declaratory Judgments Act provides that "*[i]n a case of actual controversy within its jurisdiction... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration....*"

67. To obtain an injunction, a movant must show that: they have suffered irreparable injury and will continue to do so absent relief, monetary damages are insufficient to ameliorate the harm, the balance of interests lies in their favor and it would not be contrary to the public interest that the other party be enjoined, *Weinberger v. Romero—Barcelo*, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

68. Deliu is suffering <u>irreparable harm</u> as he must be admitted to the Bar by no later than November 2026 or his passing of the Bar examination **will lapse, be denied and he will have to apply anew** for admission.  Due to the interminable suspension, his application will **never** be processed to a resolution.  The <u>ongoing</u> suspension of his application prejudices his entitlement to practice his profession and support his family.  He has <u>no other remedies</u> available at law to challenge the suspension as the Board's staff has refused to even allow him to petition for a reconsideration (see ¶¶ 25 & 26 supra) and there is no right of appeal against the Decision (see ¶ 32) supra.  The Board <u>would not suffer any harm</u> in processing his application which ultimately must be approved or rejected by the Supreme Court only.  It is otherwise <u>not contrary to the public interest</u> that his application simply be progressed to an outcome.

69. **WHEREFORE** Deliu respectfully requests this Honorable Court declare the Policy ultra vires and permanently enjoin the members, or Board (if a lawful body), applying it to his Bar application.

<u>III.</u>    <u>Second Count Against the Members (or Third Count Against the Board if Count I Supra Fails) – Violation of Constitutional Rights</u>

70. Deliu has rights under the Fifth and Fourteenth Amendments to the federal Constitution, as incorporated into the state Constitution, as pleaded in ¶ 46 supra and also has rights under Article 1, Section 9 of the state Constitution as pleaded in ¶ 47 supra.

71. By virtue of the Board purporting to create a policy that is not authorized by either the Rules or Supreme Court, Deliu has been exposed to extralegal or kangaroo processes by it or its members – including suspension of his Bar application – contrary to law in breach of the federal Constitution's Fifth and Fourteenth Amendments and/or Article 1, Section 9 of the state Constitution.

72. **WHEREFORE** Deliu respectfully requests this Honorable Court rule the Policy and/or its application to his Bar application unconstitutional and/or for such other relief as deemed fit in the circumstances.

IV.    First Count Against the Staff – Ultra Vires

73. Deliu's petition for reconsideration was received by staff on the afternoon of Thursday, March 16, 2023.  The Board met on March 13, 2023, and their next scheduled meeting is April 20, 2023; hence, as a matter of fact, the Board never considered Deliu's Petition nor any preliminary question of whether he may move to reconsider its Decision to indefinitely suspend his Bar application.

74. In the instant case, staff "act[ed] contrary to any of its rules or policies, or rules promulgated[,]" by the Supreme Court in that the Rules do not vest in either of them the powers (i) to adjudicate any supposed want in a petition sought to be filed, much less (ii) to reject for filing any prima facie valid petition and even less so (iii) to refuse to place any preliminary issue surrounding any petition's viability before the Board.

75. Their actions depart from the law in that they have made decisions they were **not** de jure entitled to make, as it is **only** for the Board to decide whether or not to accept a petition for filing, including any preliminary jurisdictional question of law as to if one of its decisions may be reconsidered.

76. Staff refused to place Deliu's petition before the Board on Wednesday, March 22, 2023 **without any legal entitlement** to do so.  Staff affirmed the refusal on March 29, 2023 **without any legal entitlement** to do so.  Staff confirmed Deliu's Petition would never be placed before the Board on April 5, 2023 **without any legal entitlement** to do so.

77. There is **no** lawful authority that permits staff to refuse to accept Deliu's Petition much less to refuse to even allow whether it may be filed to be placed before the Board.

78. Staff have **not even attempted** to cite any lawful authority to so act, much less explain any of the Refusals such that they are manifestly acting spuriously, ad hoc, arbitrarily and capriciously.

79. The Refusals cause irreparable injury that cannot be remedied through any other action and the net effect is that Deliu's Bar application is indefinitely suspended with no appellate or other pathway to challenge the Board's Decision.

80. **WHEREFORE**, Deliu respectfully requests this Honorable Court quash the Refusals – with prejudice – as actions beyond staff's powers such that Deliu's Petition be presented to the Board forthwith.

V.    Second Count Against the Staff – Injunctive Relief

81. Deliu has a clear legal right to have his Petition accepted for filing and placed before the Board for consideration, refer Rule, r 2-30.1 as extracted in full supra at ¶ 32.

82. In terms of irreparable harm, Deliu is currently being denied his legal entitlement of reconsideration by actors who simply lack the legal authority to prevent that, resulting in irremediable injury in the form of his lawful right to reconsideration not being processed.  Worse, his Bar application is currently wrongly remaining in legal purgatory and indeed will be staying so in perpetuity.  Worst, by virtue of r 4-18.2 of the Rules, **in November 2026 his admission eligibility will expire**, so there is a real and appreciable risk that his application will de facto be declined not on the merits if the wrongful suspension decision is not overturned and his only recourse to do so is to petition the Board to reconsider.  Deliu has **repeatedly tried to persuade the recalcitrant defendants** to let the Board decide whether or not he may petition for a reconsideration, **but they have refused**.  His Bar application is going stale, and the ongoing delay prejudices his ability to practice his profession and earn income to support his family.  He is bona fides.

83. As to <u>other remedies</u>, he **cannot** appeal or otherwise directly attack the Decision nor the First Refusal, Second Refusal or Third Refusal, he has **no** available remedy at law such that it is just that this institution of justice intervene.

84. Lastly, it is in the <u>public interest</u> that bar applications be handled in a manner accordant with law, lest the administration of justice be brought into grave disrepute if the rule of law is supplanted by patently wrong decision-making and by of those who lack the authority to make decisions in the first place. Collaterally, it is in the interests of justice that legal entitlements, such as Deliu's right to petition the Board to reconsider, be respected and given full and due effect. In other words, if applicants for the admission to the Bar cannot access justice, then it necessarily calls into question how members of the legal profession can help their clientele obtain justice if lawyers themselves are unable to with their own regulators.

85. **WHEREFORE**, Deliu respectfully moves this Honorable Court for either of a positive injunction compelling staff to place his Petition before the Board or, in the alternative, a negative injunction to enjoin staff from refusing to place his Petition before the Board so that may occur post-haste.

<u>VI.</u>     <u>Third Count Against the Staff – Declaratory Relief</u>

86. A "*party seeking a declaration must show that he is in doubt as to the existence or nonexistence of some right, status, immunity, power, or privilege and that he is entitled to have such doubt removed.*" *X Corp. v. Y Pers.*, 622 So. 2d 1098, 1101 (Fla. 2d DCA 1993).

87. Two live disputes exist: <u>firstly</u>, if Deliu may file a petition to reconsider the Board's Decision and, <u>secondly</u>, if the Board is the appropriate entity to determine that. There is **no** statute, rule, regulation, case, policy, et cetera that permits staff to consider, much less refuse, whether to accept Deliu's Petition for filing or to anyway not place such an obviously preliminary question of law before the Board itself. Neither of the staff have even attempted to assert a legal theory that authorized their actions refusing to accept Deliu's Petition for filing or inactions in not placing Deliu's Petition before the Board. Their unjustified conduct is hurting him.

88. **WHEREFORE**, Deliu respectfully requests this Honorable Court declare that, <u>one</u>, staff's refusal to accept his Petition for filing and/or place his Petition before the Board was not in accordance with law, such that, <u>two</u>, it thereby tolls the expiry date for his Bar application from its receipt date of March 16, 2023, until such time as his Petition is placed before the Board for its consideration.

<u>VII.</u>      <u>Fourth Count Against the Staff – Quo Warranto</u>

89. This Court has the discretionary power to inquire into the lawful propriety of an action taken by a public official, Fed. R. Civ. Pro. 81(a)(4) and for the elements see 21 Fla. Prac., Elements of an Action, Elements of the Prima Facie Case for a Writ of Quo Warranto §1703:1 (2021-2022 ed.).

90. Staff are public officers who have **no** delegated or other authority or legal basis to adjudicate the issue of whether or not Deliu may petition the Board for a reconsideration of its decision to suspend his application. If they cannot justify the legality of the First Refusal, Second Refusal or Third Refusal, then a supplemental jurisdiction remedy must follow, Fla. R. Civ. P. 1.630(d)(3).

91. The Board has been <u>vested with the power</u> to reconsider its decisions, r 2-30.1 supra at ¶ 24. It has been denied the ability to exercise that power by virtue of the actions of its staff who have purported to <u>exercise powers</u> on its behalf, i.e., to refuse to place Deliu's Petition before it and/or by virtue of their inaction in not placing Deliu's Petition before it. As neither of the staff have the power to refuse to place Deliu's Petition before it and/or fail to place Deliu's Petition before it, their actions jointly and severally are <u>legally improper</u>. There is otherwise no good reason not to <u>exercise the discretion</u> to issue the Writ.

92. **WHEREFORE**, Deliu respectfully moves this Honorable Court for the Writ to issue and, if staff are unable to justify the legality of their behavior that it be overturned as nullities, with the concurrent effect that they have no good cause to continue to refuse to accept Deliu's Petition for filing and provide it to the Board.

VIII.    Fifth Count Against the Staff – Mandamus

93. Mandamus is the proper remedy to compel a public official's performance of a legal obligation where there is no other legal remedy, *Town of Manalapan v. Rechler*, 674 So.2d 789, 790 (Fla. 4th DCA 1996).

94. Deliu's legal entitlement to reconsider is <u>clear</u>. The question is not unduly complicated in nature. It does not raise novel or complex issues of law. The facts are not materially in dispute. Deliu has <u>not delayed</u> bringing the instant action. His Petition was filed in accordance with the Rules and it was only the recent Third Refusal that finally made clear he had exhausted state remedies. There is no laches. He has <u>no other recourse</u> to compel the Board to consider his Petition aside from the instant proceeding. Corrective relief must follow.

95. **WHEREFORE**, Deliu respectfully moves this Honorable Court for the Writ to issue to compel staff to place his Petition before the Board.

IX.    Sixth Count Against the Staff – Prohibition

96. Prohibition is the vehicle "*by which a superior court, having appellate and supervisory jurisdiction over an inferior court or tribunal possessing judicial or quasi-judicial power, may prevent such inferior court or tribunal from exceeding jurisdiction or usurping jurisdiction over matters not within its jurisdiction.*" *English v. McCrary*, 348 So. 2d 293, 296 (Fla. 1977).

97. On no less than three occasions staff have refused – purportedly on the Board's behalf but without actual or ostensible authority – to accept his Petition for filing and/or place the question of whether he may file it before the Board, which is the exclusive body that may adjudicate that issue. On April 11, 2023, Deliu yet again asked them to reconsider. They did not. On May 10, 2023 Deliu asked the Board, through its staff, to progress his Bar application. They ignored this request entirely. Absent preventative intervention from this Honorable Court, Deliu will continue to be unable to get this preliminary issue before the proper body to consider it.

98. **WHEREFORE**, Deliu respectfully moves this Honorable Court for the Writ to issue with the effect that staff be prohibited from taking any further steps to preclude his Petition from being placed before the Board for consideration.

X.      Seventh Count Against the Staff – Violation of Constitutional and/or Civil Rights

99. Deliu is entitled to due process under the state Constitution, refer ¶ 46 supra.

100.    He has been denied this by virtue of staff erring in law leading to their refusal to accept his Petition for filing and/or refusing to place it before the Board to consider whether it may be accepted for filing.

101.    Deliu's Petition asserted jurisdiction at the outset:

B.    I address jurisdiction and do so because in the Board's Decision and Reasons it referred to me petitioning the Florida Supreme Court (hereinafter the "Court") under r 3-40 of the Rules which, while I am grateful for attempting to provide me with a channel for recourse, I submit the more proper mechanism to challenge is the following (ed. – italic emphasis added, bold in original):

**2-30 Petitions Relating to Administrative Rulings.**

**2-30.1 Filed with the Board.** Any applicant or registrant who is dissatisfied with an *administrative decision* of the board that does not concern character and fitness matters may petition the board for reconsideration of the decision. Applicants also may petition the board for a suspension or *waiver* of any bar admission rule or regulation. A petition seeking a suspension or *waiver* of a rule or seeking *review of an administrative decision not related to a character and fitness recommendation* may be presented in the form of a letter, must be filed with the board within 60 days after receipt of written notice of the board's action complained of, and must be filed with a fee of $75.

102.    On March 22, 2023, staff refused to accept the Petition for filing solely on the erroneous basis that "Rule 2-30.1 does not apply to your situation" as the suspension was related to "character and fitness matters" but erred in law in so deciding.

103.    On March 26, 2023, Deliu averred as to her interpretation of the rule. On March 29, 2023, staff affirmed the 22 March 2023 reasoning and expanded with further reasoning but erred in law in so deciding.

104.    On March 30, 2023, Deliu sought that the question of whether he may seek a reconsideration be placed before the Board to determine. On April 5, 2023, in legal error, staff confirmed they would not be placing Deliu's Petition before the Board, as follows:

> The Executive Director and I determined that Rule 2-30.1 did not apply to your petition for board reconsideration. The reasons for that decision are set forth in prior correspondence. See 3/22/23 Gavagni ltr.; 3/29/23 Almon ltr. Those reasons apply with equal force for why the board will not consider your reconsideration petition at its next meeting on April 20.

105.    Staff erred as a matter of law in their interpretations of r 2-30.1 as:

A.    She/He/They erred that the decision to suspend is a character and fitness matter when that is only ancillary to such a determination and not dispositive of its character;

B.    She/He/They failed to apply the rule as a whole and, instead, inappropriately selectively relied on only part of the rule, thereby violating the most elementary requirement of statutory interpretation, namely that legislation be considered holistically and/or with the intent of the legislators;

C.    She/He/They failed to take into account the term "character and fitness recommendation" in the rule and thereby failed to distinguish between the entitlement to reconsider an administrative decision not related to a character and fitness recommendation, which a decision to suspend clearly is not and indeed ipso facto cannot be, versus a character and fitness recommendation which is reviewable under another rule in the Rules (r 3-30) which is why it is not reviewable under r 2-30.1;

D.    She/He/They based their decision on the mistaken notion that Deliu had alternative recourse available with the Florida Supreme Court positing that he could move that body to compel the processing of his application under r 3-40.2, but that rule deals with delays, which he has not objected to, and not the legality of the suspension policy or whether it ought to be applied to his Bar application, and so is inappropos;

E.    She/He/They refused to accept Deliu's interpretation on the improper, if not self-serving, justification that, if he were correct in his analysis then it would potentially make a great deal of other types of Board decisions amenable to reconsideration which would be absurd, when the difficulty of official organs to comply with the law is not at all an appropriate consideration when interpreting legislation;

F.    She/He/They unreasonably analogized Deliu's Petition to hypothetical, speculative, conjectural and ridiculous motions to reconsider decisions, particularly "to withdraw requests for information, whether to call someone for a hearing, whether to file Specifications, or any number of interim decisions", when these red herrings or strawmen would not be adjudicative in nature such that they manifestly would not be subject to reconsiderations under the rule but – even if they somehow were – conjured up imaginary petitions are irrelevant as to the propriety of his Petition; and/or

G.    She/He/They erred that the Board ever considered Deliu's formal application for a waiver.

106.    **WHEREFORE**, Deliu seeks of this Honorable Court that the First, Second and Third Refusals be set aside with a concomitant direction that staff accept Deliu's Petition for filing and refer it to the Board for determination on the merits.

## SUMMARY OF PRAYERS FOR RELIEF

107.    Deliu begs, pray and pleads for the following recourse:

A.    As to Count 1, a declaration against the Board that it is an ultra vires agency acting in violation of Deliu's constitutional rights,

B.  As to Count 2, a declaration that the Policy is ultra vires and the members or Board be enjoined from applying it to his Bar application,

C.  As to Count 3, a declaration that the Policy is unconstitutional and the members or Board be enjoined from applying it to his Bar application,

D.  As to Count 4, a declaration that the staff's Refusals are ultra vires,

E.  As to Count 5, a negative injunction prohibiting the staff from implementing the First, Second and Third Refusals or a positive injunction requiring them to place his Petition before the Board,

F.  As to Count 6, a declaration that his Bar application has been wrongly delayed thereby tolling its expiry from March 16, 2023 until such time as it is progressed in accordance with law,

G.  As to Count 7, that a Writ Quo Warrant issue requiring the staff to justify the Refusals and, if good cause is not shown, that Deliu's Petition be placed before the Board forthwith,

H.  As to Count 8, that a Writ of Mandamus issue against the staff requiring them to place Deliu's Petition before the Board,

I.  As to Count 9, that a Writ of Prohibition issue against the staff precluding them from not placing Deliu's Petition before the Board,

J.  As to Count 10, that the Refusals be set aside and the staff be ordered to place his Petition before the Board and

K.  As to all Counts, such other relief as in the interests of justice.

## JURY DEMAND

108.    Trial by jury is demanded.

## EXECUTION AND CONTACT DETAILS

109.    Respectfully submitted this 13th day of July 2023 by:                    F C Deliu

# UNITED STATES POSTAL SERVICE ®

# PRIORITY MAIL ®

USPS TRACKING® #

9505 5265 3241 3194 4004 02

EXPECTED DELIVERY DAY: 07/17/23

OD: 12 1/2 x 9 1/2

EP14F July 2022

USPS.COM/PICKUP

To schedule free Package Pickup,
scan the QR code.

**FROM:**

F.C Delia
1904 Polo Lake Drive East
Wellington, FL, 33414

**TO:** United States
Carthouse, 111 N. Adams
St., #322, Tallahassee,
FL, 32301

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.